Thomas R. Curtin
Kathleen N. Fennelly
McELROY, DUETSCH, MULVANEY
  & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07926-2075
(973) 993-8100

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| TRISTAR PRODUCTS, INC. and RAGNER TECHNOLOGY CORP. <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL EXPRESS, INC., E. MISHAN & SONS, INC., and DAP PRODUCTS, INC. <br><br> Defendants. | Civil Action No. 2:13-cv-07752-EP-MAH <br><br> District Judge Evelyn Padin <br> Magistrate Judge Michael A. Hammer |

**Motion Returnable:** March 17, 2025

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PREVAILING PARTY ATTORNEYS' FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.  INTRODUCTION ........................................................................................... 1

II.  HISTORY OF THE ACTION ......................................................................... 2

    A.  The Various Ragner Spring-Based Hoses Asserted During This Action ................ 2

        1.  The '527 vacuum hose patent ................................................................ 2

        2.  The '448 helical-spring patent .............................................................. 2

        3.  The '836 helical-spring or exoskeleton-spring patent ........................... 3

        4.  The '076 and '944 copied patents ......................................................... 4

        5.  The '560 patent .................................................................................... 5

    B.  Procedural History ...................................................................................... 6

        1.  Tristar's Preemptive Actions for "Infringement" of the '527 Vacuum-Hoe Patent and '448 Helical-Spring Patent and a Declaration of Non-Infringement ...................................................................................... 6

        2.  This Action for "Infringement" of the '527 Vacuum-Hose Patent and '448 Helical-Spring Patent, and the Substitution for the '836 Helical-Spring or Exoskeleton-Spring Patent ........................................................ 6

        3.  Plaintiffs' Prolonging This Action Through Misconduct at the USPTO to Obtain, and Maintain, the '076 and '944 Patents ....................................... 7

        4.  Plaintiffs' Abandonment of Their Arguments in This Action to Correct the Inventorship of the '941 Patent Family and Their Counsel's Disqualification Based on Tristar's Subsequent Litigation Against Ragner ......................... 9

        5.  The Reexamination and Cancellation of the Last-Remaining Patents-in-Suit and the Dismissal of This Action ............................................................ 10

III.  ARGUMENT ............................................................................................... 11

    A.  The Court Should Declare This Case Exceptional Pursuant to 35 U.S.C. § 285 ... 11

        1.  The NEI Defendants Are the Prevailing Parties ...................................... 15

        2.  The Lack of Any Substantive Strength to Plaintiffs Litigation Position Makes This Case Exceptional .................................................................. 17

i

3. Plaintiff's Litigation Conduct Demonstrates the Exceptionality of This Case ..................................................................................................20

B. The Court Should Exercise Its Discretion to Award Attorneys' Fees to the NEI Defendants Because the Case is Exceptional, and the Attorneys' Fees and Expenses are Reasonable .........................................................................................25

CONCLUSION .......................................................................................... 28

# TABLE OF AUTHORITIES

Page(s)

Cases:

*Amazon.com, Inc. v. PersonalWeb Techs. LLC*, 85 F.4th 1148 (Fed. Cir. 2023).....................13

*AMP v. United States,* 389 F.2d 448 (Ct. Cl. 1968) ................................................................24

*Astrazeneca AB v. Dr. Reddy's Labs., Ltd.*,
    No. 07-civ-6790, 2010 WL 1375176 (S.D.N.Y. Mar. 30, 2010)........................................17

*B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675 (Fed. Cir. 2019) ...............................15, 16

*Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555 (Fed. Cir. 1992)...............26

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983).................27

*Cheetah Omni LLC v. AT&T Servs., Inc.,* 949 F.3d 691 (Fed. Cir. 2020)...............................24

*CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419 (2016) ...........................................12, 15

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
    No. 12-764, 2015 WL 1284669 (E.D. Tex. Mar. 20, 2015)...............................................14

*Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990)...............................13, 24

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    No. 05-897, 2018 U.S. Dist. LEXIS 88011 (D.N.J. May 23, 2018)...............12, 13, 14, 25

*ICOS Vision Sys. Corp. v. Scanner Techs. Corp.*,
    No. 10-604, 2012 WL 512641 (S.D.N.Y. Feb. 15, 2012) .................................................24

*Inland Steel Co. v. LTC Steel Co.*, 364 F.3d 1318 (Fed. Cir. 2004) .........................................15

*In re TR Labs Patent Litig.,* MDL No. 2396, 2014 WL 3501050 (D.N.J. July 14, 2014) .......24

*Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839 (N.D. Ill. 2014)...........................13

*J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047 (Fed. Cir. 1987)...........................................26

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013).......................15, 17, 26

*Lugus IP, LLC v. Volvo Car Corp.*,
    No. 12-2906, 2015 WL 1399175 (D.N.J. Mar. 26, 2015)...........................................17, 27

*Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081 (Fed. Cir. 2024)...........................................12, 16

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
    No. 15-4431, 2023 U.S. Dist. LEXIS 95318 (D.N.J. June 1, 2023)..................................12

Cases—continued:

*Nilssen v. Osram Sylvania, Inc*., 504 F.3d 1223 (Fed. Cir. 2007) ...........................................14

*Novartis Corp. v. Webvention Holdings LLC*,
   No. 11-3620, 2015 WL 6669158 (D. Md. Oct. 28, 2015)..................................................14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545 (2014)..............12, 14, 25

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990 (Fed. Cir. 200) .............15

*Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333 (Fed. Cir. 2013).........................13

*Parallax Grp. Int'l, LLC v. Incstores LLC*,
   No. 16-929, 2023 U.S. Dist. LEXIS 234161 (C.D. Cal. Dec. 6, 2023) ............................12

*Raniere v. Microsoft Corp*., 887 F.3d 1298 (Fed. Cir. 2018) .......................................12, 15, 16

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328 (2017).....16

*SFA Sys., LLC v. Newegg, Inc*., 793 F.3d 1344 (Fed. Cir. 2015).......................................12, 25

*Shum v. Intel Corp*., 629 F.3d 1360 (Fed. Cir. 2010) ..............................................................12

*Source Search Techs., LLC v. Kayak Software Corp*.,
   No. 11-3388, 2016 WL 1259961 (D.N.J. Mar. 31, 2016) ..................................................23

*Special Devices, Inc. v. OEA, Inc*., 269 F.3d 1340 (Fed. Cir. 2001) .......................................27

*SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073 (Fed. Cir. 2014)......................................15

*Stragent, LLC v. Intel Corp*., No. 11-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014) ........12

*Taurus IP, LLC v. DaimlerChrysler Corp*., 726 F.3d 1306 (Fed. Cir. 2013)...........................17

*Therasense, Inc. v. Becton, Dickinson & Co*., 649 F.3d 1276 (Fed. Cir. 2011) ................13, 14

*TransCore, LP v. Electronics Transaction Consultants Corp*.,
   563 F.3d 1271 (Fed. Cir. 2009) ........................................................................................24

*United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362 (Fed. Cir. 2023)...........16

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
   No. 12-1285 2016 WL 3436396 (D. Del. June 15, 2016)..................................................27

U.S. Code

Patent Act, 35 U.S.C. § 101, *et seq.*
   35 U.S.C. § 135(b) (pre-AIA) ...........................................................................................21
   35 U.S.C. § 257.....................................................................................................................8
   35 U.S.C. § 285........................................................1, 11, 12, 13, 15, 16, 25, 27, 28
   35 U.S.C. § 286...................................................................................................................16

Rules

Fed. R. Civ. P.
54(d) ................................................................................................................1

Local Civil Rules, District of New Jersey
54.2 ................................................................................................................1

New Jersey Rule of Professional Conduct 1.7(a)(1) ............................................25

Regulations

37 C.F.R. § 1.56 ....................................................................................................22

37 C.F.R. § 10.23(c)(7) .........................................................................................21

37 C.F.R. § 41.202(a) ......................................................................................21, 22

Other Authorities

Manual of Patent Examination Procedure § 2001.06(D) ......................................21

Pursuant to 35 U.S.C. § 285, Federal Rule of Civil Procedure 54(d), and Local Civil Rule 54.2, Defendants National Express, Inc. ("NEI"), E. Mishan & Sons, Inc., ("EMSON") and DAP Products, Inc. ("DAP") (collectively, the "NEI Defendants") respectfully request that the Court grant them the reasonable attorneys' fees and expenses that they were improperly forced to incur in defending against the claims brought by, and conduct of, Plaintiffs Tristar Products, Inc. ("Tristar") and Ragner Technology Corp. ("Ragner") (collectively, "Plaintiffs").

## I.    INTRODUCTION

This action should never have been filed; it was a defensive maneuver, attempting to find leverage to force a settlement in the separate civil action and as facial cover for willful patent infringement by Tristar. *See* Civil Action No. 2:13-cv-01758-EP-MAH (the "1758 action"), ECF No. 1 (complaint, filed October 23, 2012); *see also id.*, ECF No. 37 (transferring case to the District of New Jersey). The products sold by the NEI Defendants—which were copied by Tristar—are embodiments of U.S. Patent No. 8,291,941 (the "'941 patent") and its family of patents, patents for a hose that expands and contracts due to its inner elastic tube within an outer fabric cover.

Knowing that it would be sued for willfully infringing the '941 patent on October 23, 2012, during the preceding weeks Tristar identified Ragner's patents, U.S. Patent No. 6,948,527 (the "'527 Patent") and U.S. Patent No. 7,549,448 (the "'448 Patent") in the prosecution history of the '941 patent. Those patents required a spring to be able to automatically extend (the '527 patent vacuum hose) and to automatically retract (the '448 patent pressure hose); nevertheless, Tristar obtained licenses for its non-spring hose product as facial cover to assert those patents as being infringed by the NEI Defendants' non-spring garden hose products. On October 22, 2012, *the day before* the '941 patent issued, Tristar—without Ragner's participation—sued the NEI Defendants for infringing the '527 and '448 spring-hose patents. When that action was dismissed for lack of standing, Tristar re-filed the complaint as this action, ultimately becoming Civil Action No. 2:13-cv-07752-EP-MAH (the "13-7752 action"). For over twelve (12) years, the NEI Defendants were forced to incur attorneys' fees and expenses to defend against baseless and vexatious infringement claims based on patents that were clearly not infringed, as well as invalid.

6

Beyond all asserted Ragner patent claims requiring a spring as a critical—missing—element, the '527 patent that started this action claims a *vacuum hose* that requires connection to "a vacuum pressure source," (*see, e.g.*, ECF No. 1-4, '527 patent, claim 1, col. 24:20–23)—the opposite of the design of the accused *garden hose* products. Knowing that this action could not be maintained based on the initially asserted spring-hose patents, Plaintiffs pivoted to focusing on patents procured by fraud on the patent office, but then *Plaintiffs* ultimately *proved those patents to be invalid*, thereby confirming the sham nature of this action. Plaintiffs filed, and maintained, this sham litigation for over twelve (12) years, forcing the NEI Defendants to incur over $1 million in attorneys' fees and expenses to defend themselves against invalid patents with claims that plainly required *spring structures* that were noticeably absent in all accused products. The NEI Defendants attempt to distill Plaintiffs' exception conduct over the past twelve (12) years of litigation into this memorandum, focusing on the most egregious of the issues that have arisen.

## II.  HISTORY OF THIS ACTION

**A.  The Various Ragner Spring-Based Hose Patents Asserted During This Action.**

**1.  The '527 vacuum-hose patent.**

The Ragner '527 patent issued from an application filed on November 25, 2002, claiming entitlement to a November 24, 2001, provisional application filing date. The '527 patent claims are very specific in only claiming (1) a "biasing means interconnected with" the flexible hose body to generate **an extending force** and (2) that the hose is "designed to connect to a vacuum pressure source capable of providing a vacuum pressure substantially below ambient air pressure." ECF No. 1-4, '527 patent, col. 24:16–24. The only structure in the '527 patent capable of providing such an extending force is the spring described at length throughout the written description. *See, e.g.*, *Id.*, col. 1:20-59, col. 6:16-33, col. 8:33–col. 7:5.

**2.  The '448 helical-spring patent.**

The Ragner '448 patent was filed as a divisional from the application that became the '527 patent, meaning that it claimed a separate invention disclosed in the original application. But whereas the '527 patent claimed a vacuum hose with a spring "biasing means" to exert an

*extending* force on the hose body, the '448 patent claimed a pressure hose (i.e., water hose) with a spring "biasing means" that was "interconnected with," and exerted a *retracting* force on, the hose body. ECF No. 1-5, '448 patent, col. 23:53-61, col. 24:54-65, col. 25:43-51. As with the '527 patent, the only structure disclosed in the '448 patent capable of exerting a retracting force on the hose body is a spring. *See, e.g.*, *Id.*, col. 4:42–col. 5:29, col. 5:40–col. 6:11.[1]

On December 15, 2022, the PTO cancelled all asserted claims of the '448 patent as unpatentable based on the prior art cited in an *ex parte* reexamination request. *See* ECF No. 382 (letter addressing the forthcoming certificate cancelling all asserted claims in this action).

### 3.    The '836 helical-spring or exoskeleton-spring patent.

With the filing of the Second Amended Complaint (ECF No. 26), Plaintiffs dropped their claims based on the '527 vacuum-hose patent but substituted for U.S. Patent No. 8,776,836 (the "'836 patent," ECF No. 26-5). The Ragner '836 patent was filed on January 30, 2006, as a separate invention from those disclosed and claimed in the '527 and '448 patents, with inventor Gary Ragner admitting repeatedly that the invention of the '836 patent was *not conceived* when the '527 or '448 patent applications were filed. After it was initially rejected as obvious based on the prior Ragner '527 and '448 patents, the '836 patent's application was abandoned. Through misconduct at the Patent Office, the application was improperly revived, and its prosecution resumed. Later, Ragner's patent counsel committed further misconduct by including a delayed claim for the '836 patent to be examined as if it was a continuation-in-part of the '527 and '448 patents—while simultaneously re-affirming that the subject matter of all claims was "new" as it related to the prior patents, negating any such claim. Nevertheless, the '836 patent ultimately issued on July 15, 2014.

---

[1] Throughout this action, Tristar has frivolously argued that the hose body itself can constitute the claimed "biasing means." *See, e.g.*, ECF No. 53, Tristar First Markman Brief, ECF pages 10–14, 18–27. In so arguing, Plaintiffs argued to avoid the context of the '448 patent *claims*, which claim a "biasing means" that is a separate and distinct element, but "interconnected with," the hose body. *See, e.g.*, *Id.* at ECF pages 21–23. Only the "biasing spring" disclosed in the '448 patent satisfies the functional requirements of the '448 patent claims.

The written description and claims of the '836 patent are specific, going so far as to define the invention as a linearly retractable hose with either (1) a helical biasing spring, where the hose body is radially compressed and indented between spring coils, or (2) an exoskeleton biasing spring that could be a helical spring, wave spring, or hybrid-wave spring. *See, e.g.*, ECF No. 26-5, col. 5:28–40, col. 10:9–22, col. 27:27–54. The plain language of the claims of the '836 patent require a spring by specifying that the "biasing means" "defines an outside radius" of the hose and that the hose body "is stowed substantially inside the biasing means when in the retracted position." ECF No. 26-5, '836 patent, col. 48:39–45; *see also id.* at col. 48:17–29. These claim limitations specify that the '836 patent cannot be infringed by non-spring hoses.

### 4.    The '076 and '944 copied patents.

On April 25, 2014, Ragner filed a purported "continuation" of the '836 patent. Though the written description was copied nearly verbatim from the '836 patent, the claims, on the other hand, were copied from the issued claims of the '941 patent and from the '941 patent's original application. Ragner did not inform the PTO that the claims were copied from the '941 patent, causing the examination to be fatally flawed despite U.S. Patent No. 9,022,076 (the "'076 patent," ECF No. 56-3) issuing on May 5, 2014. Ragner also filed a nearly identical continuation of the '076 patent that resulted in U.S. Patent No. 9,371,944 (the "'944 patent," ECF No. 197-8), which issued on June 21, 2016.

Like the '836 patent, the written descriptions of the '076 and '944 patents expressly define the "hose" invention as being a linearly retractable hose with either (1) a helical biasing spring, where the hose body is radially compressed and indented between spring coils, or (2) an exoskeleton biasing spring that could be a helical spring, wave spring, or hybrid-wave spring. *See, e.g.*, ECF No. 56-3, col. 5:14–25, col. 10:41–52, col. 27:1–28; ECF No. 197-8, col. 5:16–27, col. 9:49–62, col. 27:1–28. Thus, while the specific claim language was copied from the '941 patent, the inclusion of otherwise-generic terms like "hose" were defined "in th[ese] document[s]" as requiring either a helical spring or exoskeleton spring.

When the NEI Defendants (and Telebrands in later-consolidated actions) raised Ragner's inequitable conduct/fraud on the PTO in obtaining the '076 patent, *Plaintiffs themselves* sought supplemental examination in an attempt to "cleanse" that inequitable conduct/fraud.  *See* ECF Nos. 127-4 through 127-7.  Rather than "cleanse" that conduct, Plaintiffs' improper conduct was highlighted by the Patent Trial and Appeals Board ("PTAB") in, begrudgingly, permitting the patent to reissue due to its inability to address the relevant issues in that review from an *ex parte* supplemental reexamination.  *See* ECF No. 204-19 at ECF page 6–9 (addressing that Plaintiffs conduct in obtaining the '076 patent, and other issues relevant to patentability, cannot be reviewed or addressed through an *ex parte* supplemental examination).  Ultimately, Plaintiffs *themselves* caused the PTO to cancel all claims of the '076 and '944 patents, after Plaintiffs successfully established that Gary Ragner was a co-inventor of the '941 patent and its continuations, believing that correcting the inventorship of the '941 patent would provide a defense in the 13-1758 action.  That determination, however, resulted in the necessary invalidity of the patents that copied claim language from the '941 patent.  *See* ECF Nos. 433-3 and 433-4.

5.      **The '560 patent.**

During litigation, Ragner also filed for, and obtained, U.S. Patent No. 10,309,560 (the "'560 patent," ECF No. 340-1), another "continuation" of the '076 patent that attempted to reword the claim language to move away from the language copied from the '941 patent.  *Cf. id.*, col. 49:28–53.  However, when the Defendants (including Telebrands through case consolidation) sought to add the '560 patent into this action, Plaintiffs executed a unilateral covenant not to sue, attempting to moot any claims based on that patent.  *See* ECF No. 359-1.  That covenant, executed on March 22, 2022, operates as a license to **all Ragner patents** that would otherwise be infringed.  *See* ECF No. 350 at 4–5 (addressing the implied license and need to amend pleadings); *see also* ECF Nos. 368 through 370 (briefing on that issue).

**B.    Procedural History.**

**1.    Tristar's Preemptive Actions for "Infringement" of the '527 Vacuum-Hose Patent and '448 Helical-Spring Patent and a Declaration of Non-Infringement.**

On October 22, 2012, Tristar filed Civil Action No. 2:12-cv-06650-DMC-JAD (D.N.J.), asserting infringement of U.S. Pat. No. 6,948,527 (the "'527 patent") and U.S. Pat. No. 7,549,448 (the "'448 patent") by the NEI Defendants.  Civil Action No. 12-cv-06650, ECF No. 1.  In attempting to maintain that action, Tristar argued that it was the exclusive licensee to the asserted patents or, alternatively, that if the court disagreed, it requested leave to add Ragner as the patent owner.  Civil Action No. 12-cv-06650, ECF No. 27, ECF pages 6–9.  The court dismissed that action on August 5, 2013, because Tristar lacked standing; Tristar was not the inventor, owner or assignee of the '527 or '448 patents, and its license was only for "*certain products* covered" by those patents.  Civil Action No. 12-cv-06650, ECF No. 35 (emphasis in original).

On October 23, 2012, Tristar filed a declaratory judgement action against the NEI Defendants[2] and Blue Gentian, LLC ("Blue Gentian), Civil Action No. 2:12-cv-06675-DMC-JAD, for non-infringement of U.S. Patent No. 8,291,941 (the "'941 patent")—filing suit the day the '941 patent issued.  Civil Action No. 12-cv-06675, ECF No. 1.  Tristar's basis for filing the action was a statement by EMSON at a trade show in Las Vegas occurring over September 11–13, 2012, that the '941 patent would soon be issued and that it would be asserted against Tristar and its customers.  *See* Civil Action No. 12-cv-06675, ECF No. 43, p.2.  That action was dismissed on August 5, 2013, because the patentee—Blue Gentian—had not threatened enforcement of that patent.  Civil Action No. 12-cv-06650, ECF No. 43, pp.2-3.

**2.    This Action for "Infringement" of the '527 Vacuum-Hose Patent and '448 Helical-Spring Patent, and the Substitution for the '836 Helical-Spring or Exoskeleton-Spring Patent.**

On December 20, 2013, after the 12-6650 action was dismissed, Plaintiffs—this time joined by Ragner—filed the present action, re-asserting that the NEI Defendants were infringing the '527 vacuum-hose patent and the '448 helical-spring patent.  *See* ECF No. 1.  The '527 patent

---

[2] The defendant DAP Brands Co. is a related entity to Defendant DAP.

claims an automatically *extending* **vacuum hose** and the '448 patent claims an automatically *retracting* water hose; those opposite inventions operate based on the specific *helical spring* structure required to make the hoses automatically extend or retract. *See, e.g.*, '527 patent, Abstract; '448 patent, Abstract. Plaintiffs' infringement claims, however, were based on the sale of garden hoses that had no springs, but instead, retracted based on having an elastic inner tube as a hose body. *See* ECF No. 1. A first amended complaint was filed on January 16, 2014, reasserting infringement of the '527 and '448 patents. ECF No. 6.

While this action was pending, Ragner was still prosecuting the late-claimed "continuation-in-part" application that would result in the '836 patent. Following the '836 patent's issuance, Plaintiffs filed a second amended complaint, dropping their meritless claim for infringement of the '527 **vacuum-hose** patent, and replacing it an infringement claim for the '836 helical-spring or exoskeleton patent. *See* ECF No. 26. Though more plausible than the claim for infringement of the '527 patent (barely), the '836 patent—like the '448 patent—specifically required, and claimed, either a helical spring covered by several layers of a thin-walled flexible hose body and fabric material, or a thin-walled flexible hose body contained within an exoskeleton spring (e.g., helical, wave, or hybrid-wave spring. ECF No. 26-5; *id.* at col. 48:39–45 (the "biasing means," i.e., spring, must "define" the outer "radius" of the hose). But contrary to the explicit requirements of both the '448 and '836 patents, Plaintiffs pursued claims against products that **did not have spring structures**, whether molded within the hose layers or as an exoskeleton structure. *See* ECF Nos. 26-1 through 26-3.

### 3. Plaintiffs' Prolonging This Action Though Misconduct at the USPTO to Obtain, and Maintain, the '076 and '944 Patents.

In the beginning of 2016, the parties were finishing their (first round of) claim construction briefing. *See, e.g.*, ECF Nos. 49, 52, 53, 55, 56. During that time, Plaintiffs were separately prosecuting the '076 patent at the USPTO, having copied the claim language of the '941 patent but withheld that critical information from the Patent Examiner. *See* ECF No. 57. Desperate to prevent the Court from reaching the issue that the '448 and '836 patents require a **spring** as a claim

limitation, Plaintiffs asserted in their *reply brief* that the issuance of the '076 patent "confirmed" their claim construction position—explicitly relying on the fraud they had perpetrated at the PTO as a basis for their argument in this Court. *See ibid.*; *see also* ECF No. 66 at 8:12 – 11:20; *id.* at 10:20–25 ("The fact that even if what defense counsel is representing is true factually, the result was the issuance" of the '076 patent). The accusations against Plaintiff were not limited to those made by the NEI Defendants in this action, but also by Telebrands, who instituted separate actions against Plaintiffs based on that misconduct at the PTO and subsequent threats of infringment litigation. *See* ECF No. 57.

As a result of Plaintiffs' conduct, this action was derailed and prolonged. Plaintiffs' patent counsel was deposed to address his misconduct, *see* ECF Nos. 80, 80-2, new pleadings were required to address the '076 patent, *see* ECF No. 111, and this action was consolidated with the different Telebrands cases, *see* ECF No. 152. Plaintiffs sought to "cleanse" their past inequitable conduct/fraud by having the '076 patent supplementally examined under 35 U.S.C. § 257, an *ex parte* proceeding that is statutorily limited in what can be addressed. *See* ECF No. 127. Plaintiffs sought to consolidate these now-Consolidated Cases with the 13-1758 action, *see* ECF No. 147, further delaying these proceedings and belying Plaintiffs' true motive—attempting to provide a defense for Tristar's willful infringement in the 13-1758 action.

When the PTAB ultimately—and reluctantly—reversed the Patent Examiner's rejection of the '076 patent claims, it took care to limit its decision to only very specific, technical issues, while also addressing Plaintiffs' misconduct in how the patent was acquired and expressing regret in its inability to address those issues through Plaintiffs' *ex parte* supplemental examination. *See* ECF No. 166; *cf.* ECF No. 204-19 at ECF page 6–9. As a result, a Fourth Amended Complaint was filed (ECF No. 197) and this action was restarted to address the misconduct that was identified, but could not be reached, by the PTAB. *See* ECF No. 210. And thus, a new round of claim construction briefing was required. *See* ECF Nos. 223 through 231, 250 through 256, 258, 261, 262. That time, Plaintiffs knew that their arguments could not be supported by the clear language of the Ragner patents and therefore utilized an expert to improperly opine on the construction of the claim

13

terms at issue, requiring motions to exclude that inadmissible testimony under Rule 702 and *Daubert*. *See* ECF Nos. 257, 260, and 272 through 274. None of these issues were ever addressed, however, because the parties were ordered to mediate this—and all other related cases—through private mediation, a process that took years before an impasse could be declared. *See* ECF Nos. 299 (staying case), 336 (resuming case).

### 4. Plaintiffs' Abandonment of Their Arguments in This Action to Correct the Inventorship of the '941 Patent Family and Their Counsel's Disqualification Based on Tristar's Subsequent Litigation Against Ragner.

Just as this action was slowing down due the need to address Plaintiffs' PTO misconduct and the resulting issues based on the '076 and '944 patents, Plaintiffs abandoned their infringement claims to those patents by arguing in the 13-1758 action that Gary Ragner was a co-inventor to the '941 patent family. *See, e.g.*, Civil Action No. 13-1758, ECF No. 348 (Order granting motion for hearing on correction of inventorship); *id.*, ECF No. 569 (Amended Opinion correcting inventorship); *id.*, ECF No. 586 (Federal Circuit mandate). Plaintiffs' arguments in the 13-1758 action were directly contrary to the *existence* of a plausible claim being in this case, implicitly conceding that no valid claim was ever asserted here.

During the later stages of Plaintiffs' correction of inventorship arguments, the parties' briefing was renewed in this action, addressing Plaintiffs' improper patents and improper expert declarations. Plaintiffs sought to prevent the Court from addressing the issues with respect to the '560 patent and, therefore, issued a unilateral covenant not to sue on the '560 patent, providing a license to **all** Ragner patents and ending any case or controversy. *See* ECF No. 350 at 4–5 (addressing the implied license and need to amend pleadings); *see also* ECF Nos. 368 through 370 (briefing on that issue). Though that should have ended this action, Plaintiffs persisted, despite the law contradicting their arguments. *See* ECF Nos. 368 through 370 (briefing on that issue).

While these issues were playing out before this court, the '448 patent was being reexamined, and all relevant claims were subsequently cancelled by the PTO. *See* ECF No. 382 (letter addressing the forthcoming certificate cancelling all asserted claims in this action). At the same

time, Plaintiffs' efforts to defend Tristar's willful infringement in the 13-1758 action backfired. The business relationship between Tristar and Ragner fell apart, leading to *Plaintiffs' counsel*—i.e., the attorneys representing *both* Tristar *and* Ragner in this action—filing a separate action *against Ragner* on behalf of Tristar. *See* ECF No. 377. The fallout from *Ragner's own attorneys* filing suit on behalf of Tristar required disqualification of Plaintiffs' counsel. *See, e.g.*, ECF No. 377 (letter addressing this issue); ECF No. 386 (counsel from Ropes & Gray withdrawing); ECF No. 389 (counsel from Paul Weiss withdrawing); ECF No. 391 (counsel from Bakos & Kritzer withdrawing); ECF No. 416 (counsel from Kritzer McPhee withdrawing). Though correction of the inventorship of the '941 patent family *could have* led to ending the 13-1758 action, thereby protecting Tristar from its willful infringement, it could only do so if Ragner remained a co-owner of the '941 patent family and aligned with Tristar. As a result of Tristar's actions, Plaintiffs abandoned the arguments being made for over a decade in this action, while achieving nothing but delay, multiplying the fees and expenses that the NEI Defendants were forced to incur.

**5.    The Reexamination and Cancellation of the Last-Remaining Patents-in-Suit and the Dismissal of This Action.**

On September 26, 2023, Ragner, having been sued by Tristar, sold all of its rights, titles, and interests in and to the asserted Ragner patents to Telebrands (as well as its acquired interest in the '941 patent family). At that point, this action was rendered moot. Tristar, as merely a licensee to *some* patent rights, lacked standing to pursue this action—just as Tristar had been told over ten (10) years earlier. *Compare* Civil Action No. 12-cv-06650, ECF No. 27, ECF pages 6–9 (arguing to maintain an action without joining patent owner Ragner) *with id.*, ECF No. 35 (dismissing for lack of standing). Despite lacking standing, Tristar persisted. Unable to have the case dismissed, reexaminations for all asserted patents were filed with the PTO. The relevant claims of the '448 patent had been previously cancelled, but this time, the PTO addressed the necessary consequences of Plaintiffs' decision to correct the '941 patent family by adding Gary Ragner as a co-inventor— the '076 and '944 patents were necessarily rendered unpatentable and cancelled. *See* ECF Nos.

433-3 and 433-4. At that point, Plaintiffs lacked standing and all relevant patent claims were in the process of cancellation. Despite this, Plaintiffs persisted.

Undeterred, but unclear how to proceed without standing and while asserting patents that were in the process of cancellation, Tristar scrambled. It sought any documents related to Ragner's decision to sell its patent rights to Telebrands. *See* ECF No. 440. Tristar suggested wide ranging *new* theories—not patent-related—to be able to proceed against Telebrands, unable to comprehend how its own action in *suing Ragner* might have led to this result. *See ibid.* When the Court indicated such theories could not be presented here, Tristar filed separate litigation. *See* ECF No. 450. This set off another six (6) months of litigation over how to accomplish dismissal of Plaintiffs' moot cases and claims; claims that were first moot because Plaintiffs lost all rights in the Ragner patents, and additionally moot because the patents were cancelled by the PTO. *See, e.g.*, ECF No. 490 (letter addressing mootness, the parties' respective positions, and why a stipulated dismissal could not be reached without waiving rights).

Finally, on January 15, 2025, after more than twelve (12) years of litigation over patents for **spring** hoses—asserted against products that had no springs—this action finally ended with the Court dismissing all claims and counterclaims "with prejudice." ECF No. 506. At that point, this long endured litigation concluded. Plaintiffs' attempt to materially alter the parties' legal relationship in their favor had finally failed. And critically, in getting to that result, Plaintiffs conceded the frivolousness of the claims asserted here, by sacrificing them in favor of an ill-fated attempt to avoid an adverse finding of willful infringement in the 13-1758 action—Plaintiffs' original, and only, litigation goal.

### III.    ARGUMENT

#### A.    The Court Should Declare This Case Exceptional Pursuant to 35 U.S.C. § 285.

The patent statute provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Under the statute, there are two basic requirements for an award of attorneys' fees: (1) the party seeking fees is the "prevailing party" and (2) the case is "exceptional." A party must prove its entitlement to fees under § 285 by a preponderance of the

evidence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557-58 (2014); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05-897, 2018 U.S. Dist. LEXIS 88011, at *4 (D.N.J. May 23, 2018).

To be the "prevailing party," there must be the "necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that the district court could entertain [the defendant's] fee claim under 35 U.S.C. § 285." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018); *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) ("[T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.") (internal quotation omitted). For purposes of awarding attorney fees under § 285, "there can be only one winner." *Luv N' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024) (quoting *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010)).

An exceptional case "is simply one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) *or* the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554 (emphasis added); *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *4; *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2023 U.S. Dist. LEXIS 95318, at *24-25 (D.N.J. June 1, 2023). Courts consider the "totality of the circumstances" when determining whether a case is exceptional, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 & n.6; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *5; *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). No single element is dispositive, and considerations can include "bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, [and] litigation misconduct." *Stragent, LLC v. Intel Corp.*, No. 11-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014).

Section 285 discourages certain exceptional conduct by imposing the cost of bad litigation decisions on the decision maker. *Parallax Grp. Int'l, LLC v. Incstores LLC*, No. 16-929, 2023 U.S. Dist. LEXIS 234161, at *27 (C.D. Cal. Dec. 6, 2023). Significantly, a case may be declared

exceptional when a party continues to prosecute the case it knows is without merit. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) ("The filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitute grounds for declaring a case exceptional under 35 U.S.C. § 285."); *Amazon.com, Inc. v. PersonalWeb Techs. LLC*, 85 F.4th 1148, 1161 (Fed. Cir. 2023) (affirming finding of exceptionality for unreasonable litigation conduct in light of the requirements that "the attorney must continually reevaluate the positions advanced" and "must continually assess the soundness of pending infringement claims").

In connection with an attorney's fees motion, the Court may also consider a party's conduct before the PTO. "[P]revailing on a claim of inequitable conduct often make a case 'exceptional,' leading potentially to an award of attorneys' fees under 35 U.S.C. § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc); *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 851 (N.D. Ill. 2014) ("Plaintiff likely would not have obtained the patents at issue nor sued the Defendants here for infringement" had it not committed inequitable conduct.). Proving inequitable conduct requires showing that: (1) the undisclosed information was material, *i.e.*, but for the deceptive conduct, the PTO would not have allowed a claim; and (2) "the patentee acted with specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290-91; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *6. In cases involving "'affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit,' materiality is presumed." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1346 (Fed. Cir. 2013). Such misconduct is material *per se* because "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." *Therasense*, 649 F.3d at 1292.

To satisfy the intentionality prong of the inequitable conduct standard, the moving party must show that the patent applicant knew of the information, knew it was material, and made a deliberate decision to withhold it from the PTO. *Therasense*, 649 F.3d at 1291; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *6. "Because direct evidence of deceptive intent is rare," a court may

infer intent from indirect and circumstantial evidence, provided that the inference is the "single most reasonable inference" available and that the evidence is sufficient to require a finding of deceitful intent "in light of all of the circumstances." *Therasense*, 649 F.3d at 1290. A deliberate decision to withhold known material information shows intent. *Ibid*. Affirmative acts of egregious misconduct may also give rise to an intent to deceive. *Id*. at 1287. In addition, multiple false statements and repeated material omissions support the finding that a specific intent to deceive is the single most reasonable inference. *See Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1235 (Fed. Cir. 2007) (affirming inequitable conduct where issues collectively "indicated repeated attempts to avoid playing fair and square with the patent system").

In considering inequitable conduct in connection with a motion under 35 U.S.C. § 285, the Court applies the "preponderance of the evidence" standard. *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *6-7; *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 12-764, 2015 WL 1284669, at *5 (E.D. Tex. Mar. 20, 2015) ("[T]he Court will consider [evidence of inequitable conduct] as part of the 'totality of the circumstances' inquiry required by *Octane*, and the totality of the evidence . . . will be weighed using the preponderance of the evidence standard."); *Novartis Corp. v. Webvention Holdings LLC*, No. 11-3620, 2015 WL 6669158, at *4 n.5 (D. Md. Oct. 28, 2015) ("Regardless of whether [the prevailing party] could establish that [the patent owner] engaged in inequitable conduct before the PTO, this court finds that [the patent owner's] actions at least justify an inference of improper motivation or subjective bad faith, both of which can include a district court's totality of the circumstances inquiry upon a showing of a preponderance of the evidence."). The Court uses the inequitable conduct framework of materiality and intent as a guide in considering a party's conduct before the PTO, but the relevant inquiry is the *Octane* standard, *i.e.*, whether the case "stands out from others with respect to the substantive strength of a party's litigating positions (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *8 (citing *Octane Fitness*, 134 S. Ct. at 1756).

Moreover, reasonable attorney's fees may be granted to a prevailing party in exceptional cases "to prevent an alleged infringer from suffering a gross injustice." *Kilopass Tech., Inc. v. Sidense Corp*., 738 F.3d 1302, 1313 (Fed. Cir. 2013). "[Section] 285 is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust . . . to require it to bear its own costs." *Ibid*.

### 1.    The NEI Defendants Are the Prevailing Parties.

On January 15, 2025, this Court *dismissed with prejudice* Tristar's and Ragner's remaining patent infringement claims, after each and every asserted claim was determined to be unpatentable, and then cancelled, by the USPTO. *See* ECF Nos. 499, 500, 501, 506. Whether a party qualifies as a "prevailing party" is a question of law. *See, e.g.*, *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014) ("In a patent case, Federal Circuit law governs the determination of which party has prevailed."); *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 992 (Fed. Cir. 200) ("[O]ur review of the meaning of the term 'prevailing party' is de novo.") (quoting *Inland Steel Co. v. LTC Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004)). When a court dismisses a plaintiff's claims on the merits or for a non-merits based reason, the defendant is rendered the "prevailing party." *CRST*, 578 U.S. at 432-34; *B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 678-79 (Fed. Cir. 2019).

In *B.E. Tech.*, the Federal Circuit addressed a similar factual posture, holding that the defendant was rendered the "prevailing party" for purposes of §285 where the plaintiff's patent-infringement claims were dismissed *without prejudice* based on mootness following cancellation of the asserted patent claims by the USPTO as the result of an *inter partes* review. 940 F.3d at 679. The court considered whether the dismissal "effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" *Ibid.* (quoting *Raniere*, 887 F.3d at 1306). The court considered the dismissal for mootness in the context of the *Raniere* dismissal for lack of standing, noting "that distinction does not warrant a different result." *B.E. Tech.*, 940 F.3d at 679. In both cases, the claims were determined unpatentable by the PTO and then

cancelled. *Ibid.* That was enough in both *Raniere* and *B.E. Tech.* to render the defendant the prevailing party. *Ibid.*

Here, not only did the NEI Defendants successfully *prevent* Plaintiffs from effecting a material alteration of the parties' legal relationship in the Plaintiffs' favor, but the dismissal "with prejudice" materially altered the parties' legal relationship in the *NEI Defendants'* favor. *See* ECF No. 506 (dismissing with prejudice); *see also B.E. Tech.*, 940 F.3d at 679; *Raniere*, 887 F.3d at 1308 ("Dismissal of an action *with prejudice* is *a complete adjudication* of the issues presented by the pleadings and is a *bar to a further action* between the parties." (citations omitted); *ibid.* ("The district court's dismissal with prejudice of Raniere's action gave Appellees the full relief to which they were legally entitled. Thus, to the extent any relief on the merits remains a necessary predicate to prevailing-party status after *CRST*, the dismissal with prejudice here was such a judgment. This suffices to make Appellees 'prevailing parties.' For these reasons, we conclude the district court did not err in finding Appellees are 'prevailing parties' for the purposes of § 285. We affirm this determination accordingly."); *Luv N' Care*, 98 F.4th at 1105 ("LNC successfully achieved a material alteration in its legal relationship to EZPZ, which no longer has the ability to enforce the '903 patent against LNC's accused products."); *United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362, 1368 (Fed. Cir. 2023) (finding party prevailed where opposing party "can never again assert the same patents against . . . [the] same accused products").

Plaintiffs' claims were dismissed "with prejudice" and can no longer be asserted. Further, the NEI Defendants had stopped selling the accused products more than six (6) years before dismissal and, under the Patent Act's six-year look-back statute, 35 U.S.C. § 286, the time to raise any other claim against those products has lapsed. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 337-38 (2017) (discussing the Patent Act's six-year look back period in the context of rejecting a claim for laches on claims filed during that window).

Accordingly, the NEI Defendants "prevailed" in this action as a matter of law.

2. **The Lack of Any Substantive Strength to Plaintiff's Litigation Position Makes This Case Exceptional.**

a. The abject baselessness of Plaintiffs' initial litigation positions demonstrates the exceptionality of this case. Plaintiffs began this action by claiming infringement of patents that (1) a specifically claiming a *vacuum* hose that required a spring to extend (the '527 patent) and (2) a patent specifically requiring a spring to retract (the '448 patent), and then substituted in (3) a patent even more explicitly requiring one of two *specific types of* spring to retract (the '836 patent). None of these patents could possibly be infringed by the accused products, for at least the reason that each product *lacked a spring*. "[A] wide variety of proofs can provide the requisite showing of bad faith under § 285." *Kilopass*, 738 F.3d at 1314. "[A] case can be found exceptional when a party prolongs litigation in bad faith." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). "[A] party . . . must continually assess the soundness of pending infringement claims . . . ." *Ibid*. "When a plaintiff is notified of the defects of its case yet continues to assert its claims in light of overwhelming evidence to the contrary, and proceeds with arguments that a reasonable attorney knows are baseless, it litigates in bad faith." *Astrazeneca AB v. Dr. Reddy's Labs., Ltd.*, No. 07-civ-6790, 2010 WL 1375176, at *4-7 (S.D.N.Y. Mar. 30, 2010); *see also Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906, 2015 WL 1399175, at *4-6 (D.N.J. Mar. 26, 2015).

Plaintiffs' "infringement" claims in this action were nothing more than a facial attempt to provide Tristar with a response to its willful patent infringement of the '941 patent family. *See, e.g.*, Civil Action No. 12-cv-06650, ECF No. 1 (Oct. 22, 2012, infringement action without Ragner); Civil Action No. 12-cv-06675, ECF No. 1 (Oct. 23, 2012, declaratory judgment action for non-infringement of the '941 patent); Civil Action No. 13-cv-1758, ECF No. 1 (Oct. 23, 2012, action against Tristar for infringement of the '941 patent). Having been threatened by Defendant EMSON at a trade show in September 11–13, 2012, Tristar reviewed the '941 patent to uncover that the Ragner '527 patent was a prior art reference cited by the Examiner during prosecution of the '941 patent, which was overcome in issuing the '941 patent, and sought out Ragner to license

those patents. *See* Civil Action No. 12-cv-06675, ECF No. 1, ¶¶ 24–27; *see also* Civil Action No. 12-cv-06650, ECF No. 1. But the Ragner patent family *specifically* claims a spring structure in each and every one of its patents, a spring structure that no reasonable person could believe existed in the accused products. Despite the theories evolving over the more-than-twelve-years of litigation, Plaintiffs' "infringement" claims have always been based on patents that were irretrievably invalid and unenforceable, and unmistakably not infringed.

b. A plain reading of the claims of the '527 patent shows that it cannot possibly be infringed by the NEI Defendants' accused garden hose. The '527 patent specifically claims (1) a "biasing means interconnected with" the flexible hose body to generate **an extending force** and (2) that the hose is "designed to connect to **a vacuum pressure source capable of providing a vacuum pressure** substantially below ambient air pressure." ECF No. 1-4, '527 patent, col. 24:16–24 (emphasis added). The only structure in the '527 patent capable of providing the required *extending force* is the spring described at length throughout the written description. *See, e.g.*, *Id.*, col. 1:20-59, col. 6:16-33, col. 8:33–col. 7:5. By contrast, the accused products have an elastic inner tube that can stretch as the hose fills with water and, when stretched and water is released, provides an elastic *retracting force* to allow the hose to shrink back to its relaxed state. The accused products lack a spring and do not connect to "a vacuum pressure source capable of providing a vacuum pressure." There was no possible claim here, yet Plaintiffs filed—and maintained—that baseless claim for *years*. *See, e.g.*, ECF Nos. 1, 26; Civil Action No. 12-cv-06650, ECF No. 1 (filed Oct. 22, 2012).

c. Similarly, a plain reading of the '448 patent shows that it too could never have been infringed by the accused products. Plaintiffs' argument for over a decade was that the claims of the '448 patent—claims that specifically require a spring as the "biasing means" that is "interconnected with" the hose body—could be infringed by the NEI Defendants' non-spring garden hoses. To form that argument, Plaintiffs argued that the "biasing means," could be defined by only the function of providing a "biasing force"—a term in the patent that is defined to include both the *retraction force* of the spring and any *resistance force* from the hose body itself—specifically arguing to avoid construing the term in context of the *claimed* "biasing means," which is a structure

23

separate from and "interconnected with" the hose body.  *See, e.g.*, ECF No. 53, ECF pages 18–23; ECF No. 1-5, '448 patent, col. 6:6–9 (hose body generates force to "resist" expansion), col. 6:33–37 (defining "bias force" as including "both the spring bias and any biasing cause by the flexible cover material that actually defines the hose).  In fact, the '448 patent does not disclose a single embodiment *without* a spring or that could function (or look) like the accused products, all of which include an *inner elastic tube* and outer fabric outer cover unconnected except at their ends— with no spring.  Plaintiffs have never identified a "biasing means" in the accused product that is different than the tubes that "actually define the hose," because they cannot—the accused products do not have the *additional* "biasing" structure required by the claims of the '448 patent.  Further, as was demonstrated during this litigation, the '448 patent was unpatentable and should never have been issued.

   d.  After pressing impossible claims for infringement of the '527 patent for over a year, Plaintiffs finally dropped that theory when they could substitute it, albeit with an equally bad infringment claim based on the '836 patent.  *See* ECF No. 26.  The '836 patent is very specific.  It **defines** the described and claimed invention as a linearly retractable hose with either (1) a helical biasing spring, where the hose body is radially compressed and indented between spring coils, or (2) an exoskeleton biasing spring that could be a helical spring, wave spring, or hybrid-wave spring.  *See, e.g.*, ECF No. 26-5, col. 5:28–40, col. 10:9–22, col. 27:27–54.  It emphasizes the spring requirement in the claims by specifying that the claimed "biasing means" "defines an outside radius" of the hose and that the hose body "is stowed substantially inside the biasing means when in the retracted position."  ECF No. 26-5, '836 patent, col. 48:39–45; *see also id.* at col. 48:17–29.  Such a structure can only be accomplished by the required spring and, moreover, the *inner elastic tube* in the accused products could never be confused as "defin[ing] an outside radius" of the accused product or that the hose was "stowed substantially inside" the *inner* elastic tube. Plaintiffs' pursuit of these claims was frivolous when filed and improperly maintained.

   e.  If Plaintiffs had not derailed this action by inserting their own inequitable conduct/fraud in obtaining and maintaining the '076 and '944 patents, the Court would have been able to reach

the merits of these issues **back in 2016**, when the parties were completing claim construction.  *See* ECF No. 57.  This Court would have been able to come to the same conclusion as the PTO did— the asserted claims of the '448 patent were unpatentable, and it would separately have been able to quickly and easily determine that the asserted claims were not infringed.

Moreover, despite the PTO's cancellation of the asserted claims of the '448 patent on December 15, 2022, Plaintiffs persisted in this litigation undaunted, maintaining claims for infringement of the two remaining patents, the facially unenforceable and non-infringed '076 and '944 patents, patents obtained by inequitable conduct/fraud on the PTO.  Persisting at that point was also unreasonable in light of the fact that, upon the mootness of the '448 patent claims, Plaintiffs had lost effectively all claims for damages from the NEI Defendants.  For at least these reasons, Plaintiffs' litigating positions in connection with this action were objectively unreasonable and frivolous, warranting a finding of exceptionality under 35 U.S.C. § 285.

**3.      Plaintiff's Litigation Conduct Demonstrates the Exceptionality of This Case.**

a.  After filing and maintaining this action based on patents that could not possibly have been infringed, *supra* at 17–20, Plaintiffs prolonged this action by asserting *the result of* their inequitable conduct/fraud at the PTO to exploit the confusion created by having directly copied claim language from the '941 patent (i.e., the patent under which the accused products were licensed) to improperly argue that Ragner has somehow invented a non-spring hose within the patents that *exclusively* and *explicitly* require these very specific types of springs.  *See, e.g.*, ECF No. 57; ECF No. 66 at 10:20–25.  In so doing, Plaintiffs also dramatically multiplied these proceedings by making similar frivolous "infringement" assertions against Telebrands, requiring, ultimately, five (5) separate cases to be consolidated and litigated together, including through *years* of mediation for all cases simultaneously.

Throughout these proceedings, Plaintiffs persisted in the face of every rejection and rebuffing of their arguments and/or theories, continually failing to re-assess and withdraw patent infringement claims they knew to be baseless.  Instead, Plaintiffs advanced increasingly unreasonable litigation positions, prolonging the litigation against the NEI Defendants so that the case

spanned over twelve (12) years, only to abandon their claims and legal theories in this case in favor of an attempted defense for Tristar's willful infringement in the related 13-1758 action.

b.  When faced with the impending claim constructions which would have held—as the USPTO separately has—that the Ragner patent claims require a spring-retracting means to function as an expandable/contractable hose, Plaintiffs shifted their strategy to inject in this action the fraud that Plaintiffs had perpetuated on the Patent Office in connection with the '076 patent and its claim language copied directly—including a typographical error—from the Berardi '941 issued patent and its corresponding application. *See* ECF No. 57.  Despite Ragner's inventions clearly specifying that the invention required a spring to function as an expandable and retractable hose— findings later confirmed by the USPTO—Plaintiffs asserted that because the Patent Office issued the '076 patent claims with language copied directly from the '941 patent, those copied claims must cover the non-spring hose products sold by the NEI Defendants. *See, e.g.*, ECF No. 56 at ECF pages 19-20; ECF No. 66 at 10:20–25.  But as the PTAB ultimately recognized, the '076 patent claims required *more than* the elements making up the '941 patent, and therefore the elements of the NEI Defendants' products. *See* ECF No. 204-19 at ECF pages 15–16.  The PTAB recognized throughout its decision that Plaintiffs' inequitable conduct/fraud in how the '076 patent was prosecuted prevented it from addressing the critical issues. *See id.* at ECF page 6–9.

By copying the '941 patent's claim language into the '076 patent, Plaintiffs violated 35 U.S.C. § 135(b) (pre-AIA) ("A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted.").  Additionally, Plaintiffs and their patent counsel withheld that information from the Patent Examiner—violating the PTO's rules as to the duty of candor.  37 C.F.R. § 10.23(c)(7) (defining "[k]nowingly withholding from the Office information identifying a patent or patent application of another from which one or more claims have been copied" as misconduct); Manual of Patent Examination Procedure ("MPEP") § 2001.06(D) ("Information Relating to Claims Copied from a Patent": "Where claims are copied or substantially copied from a patent, 37 C.F.R. 41.202(a) requires the applicant, at the

time he or she presents the claim(s), to identify the patent and the numbers of the patent claims. Clearly, the information required by 37 C.F.R. 41.202(a) as to the source of copied claims is material information under 37 C.F.R. 1.56 and failure to inform the USPTO of such information may violate the duty of disclosure.").

By intentionally withholding material information from the PTO, Plaintiffs' intent for purposes of inequitable conduct is clear. Plaintiffs admit to having copied the claim language without informing the Patent Examiner, rendering intent to deceive the single most reasonable inference. The '076 patent, and subsequently the '944 patent, issued *because of* Plaintiffs' inequitable conduct—but those patents were nevertheless unenforceable *due to* Plaintiffs' inequitable conduct. That conduct caused this action to extend from 2016, when it was almost complete, until 2025, when it was finally dismissed. Had the Court reached the issues, it would have found the '076 and '944 patents unenforceable due to inequitable conduct.

c.   Confirming that Plaintiffs' primary motive for filing this action was as a defense to Tristar's willful infringement in the 13-1758 action, *Plaintiffs themselves* caused the '076 and '944 patents to be rendered unpatentable and cancelled by the PTO. While prolonging this action beyond 2016, in the separate 13-1758 action, Plaintiffs implicitly acknowledged the frivolousness of their position by seeking to *correct* the inventorship of the '941 patent family to add Gary Ragner as an inventor of those patents—by establishing that Gary Ragner contributed to the *conception of the invention* in 2011. If the invention was not conceived of until 2011—as Plaintiffs argued and established—then it was **not** invented in the earlier Ragner '527, '448, or '836 patents, demonstrating that every argument Plaintiffs took in this action was objectively, *and subjectively*, frivolous from the outset.

In the 13-1758 action, Tristar moved to correct the inventorship of the Berardi '941 patent to add Gary Ragner, one of the named inventors of the '076 and '944 patents, as a co-inventor of the Berardi '941 patent. *See* Civil Action No. 13-cv-1758, ECF No. 347. Judge Hilman granted that motion, and based upon the evidentiary presentation by Plaintiffs, determined that Gary Ragner was a co-inventor with Michael Berardi of the '941 patent in 2011. *Id.*, ECF No. 569 (Amended

Opinion).  That decision was affirmed on appeal by the Federal Circuit.  *Id.*, ECF No. 586 (mandate).  As a direct and necessary consequence of *Gary Ragner's designation as a named inventor on the Berardi '941 patent*—i.e., Plaintiffs' argument and evidence—the '076 and '944 patents were determined unpatentable by the USPTO and cancelled.  *See* ECF Nos. 433-3 and 433-4 (reexam orders).

The direct (and foreseeable) consequence of *Plaintiffs' actions* to add Gary Ragner as a co-inventor of the '941 patent family, aided by Ragner and its principals (including Gary Ragner), conclusively established that the '076 and '944 patents were *unpatentable*, negating every argument made by Plaintiffs in this action.  In arguing—and proving—that Gary Ragner was a co-inventor to the '941 patent family, Plaintiffs proved that their claims in this action based on the '076 and '944 patents were, and had always been, objectively and subjectively baseless.

At least by the time that the inventorship of the '941 patent family was corrected,[3] Plaintiffs should have re-assessed their litigation position and dismissed all claims with respect to the '076 and '944 patents.  Plaintiffs' concurrent litigation of contradictory positions—misappropriating the '941 patent claim language into the '076 patent and asserting it as Gary Ragner's invention from 2008, yet then seeking to add Gary Ragner as a co-inventor *of the Berardi '941 patent* that was conceived in 2011—further shows why this action is exceptional.  *Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388, 2016 WL 1259961, at *5-7 (D.N.J. Mar. 31, 2016) (case exceptional because "this flip-flopping stands out from the others with respect to the substantive strength of a party's litigating position").  The result of that "flip-flopping" is that years of litigation occurred in this case unnecessarily.  Plaintiffs' own arguments and evidence established that the '076 and '944 patents were unpatentable and resulting in their cancellation.  Nothing could be more definitive in establishing Plaintiffs' bad faith and unreasonableness in, and weakness of, their litigation positions.  Nevertheless, Plaintiffs persisted in litigating these patent claims after establishing their invalidity.

---

[3] More likely, Plaintiffs should have dropped those claims once they decided to take the exact opposite *factual* position in front of a separate Judge in this District.

By these actions, Plaintiffs made clear that they subjectively knew they did not have any viable patent claims under the '076 and '944 patents. *Eltech Sys.*, 903 F.2d at 811 (Where "the patentee is manifestly unreasonable in assessing infringement, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence."). Plaintiffs pursued their infringement claims under the '076 and '44 patents against the NEI Defendants in bad faith, failing to assess that they had an unreasonably weak litigating position from the outset.

d.  Moreover, on *March 22, 2022*, Plaintiffs should have recognized their fatal error in providing the NEI Defendants with a *unilateral* (*i.e.*, no mutual agreement) covenant not to sue on the '560 patent—a "continuation" of the '076 and '944 patents.  Such unilateral covenant conveys an implied license to all patents-in-suit that would be required to obtain the benefit of the grant, rendering all infringment remaining claims futile.  Plaintiffs were presented with, and fully cognizant of, the prevailing case law that this unilateral covenant not to sue operates by law as an implied license to all of the patents-in-suit and that any purported disclaimer Plaintiffs may have sought to include is ineffective to negate the implied license.  *ICOS Vision Sys. Corp. v. Scanner Techs. Corp.,* No. 10-604, 2012 WL 512641, at *5 (S.D.N.Y. Feb. 15, 2012) (citing *TransCore, LP v. Electronics Transaction Consultants Corp.,* 563 F.3d 1271, 1275 (Fed. Cir. 2009)); *In re TR Labs Patent Litig.,* MDL No. 2396, 2014 WL 3501050, at *3 (D.N.J. July 14, 2014) ("A covenant not to sue operates in the same way as an authorized sale or license of a patent product under the patent exhaustion doctrine.") (citing *TransCore,* 563 F.3d at 1276).[4]

As a result of Plaintiffs' covenant, they were estopped from derogating that covenant; they could no longer maintain any claims for patent infringement against the NEI Defendants based on

---

[4] *See also Cheetah Omni LLC v. AT&T Servs., Inc.,* 949 F.3d 691, 695 (Fed. Cir. 2020) (a license to a particular patent impliedly includes a license to all prior patents and continuations that "disclose the same inventions as the licensed patent."); *AMP v. United States,* 389 F.2d 448, 453 (Ct. Cl. 1968) ("[W]here the owner of a patent grants to a licensee the right to use a patented machine, the grant carries with it, by necessary implication, a license under any other patent of the licensor which would be infringed by operation under the grant."); *TransCore,* 563 F.3d at 1279 (This legal estoppel doctrine applies "where a patentee has licensed or assigned a right, received consideration [which includes defeating a declaratory judgment claim], and then sought to derogate from the right granted.").

the accused products. Nevertheless, Plaintiffs persisted with this action, once again failing to re-assess their litigation position and maintaining legal theories that were contrary to the law.

e. This case is exceptional. Plaintiffs brought meritless claims, then prolonged this action through inequitable conduct/fraud on the PTO. Plaintiffs argued contradicting positions between this action and the 13-1758 action, ultimately proving in the 13-1758 action that their arguments to this Court were frivolous and that their legal positions were wholly meritless. Even worse, Tristar created an absurd conflict of interest for Plaintiffs' counsel, which created further delay and multiplied these proceedings unnecessarily. By employing Plaintiffs' counsel, which were commonly representing *both* Tristar and Ragner in the Consolidated Cases, to file suit *against Ragner*, its counsel was directly adverse to its existing client (Ragner) on behalf of its other client (Tristar). *See* New Jersey Rule of Professional Conduct 1.7(a)(1). Though this issue was raised, *see* ECF Nos. 377, 390, it was never reached due to all of Plaintiffs' counsel withdrawing, *see* ECF Nos. 386, 389, 391, 416.

This case is clearly "one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) *or* the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554 (emphasis added); *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *4; *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2023 U.S. Dist. LEXIS 95318, at *24-25 (D.N.J. June 1, 2023). Considering the totality of the circumstances, an award of fees and expenses under § 285 is appropriate and warranted. *See Octane Fitness*, 572 U.S. at 554 & n.6; *Howmedica*, 2018 U.S. Dist. LEXIS 88011, at *5; *SFA Sys.*, 793 F.3d at 1348. This Court should hold that this case is exceptional and award the NEI Defendants their fees and expenses.

**B.    The Court Should Exercise Its Discretion to Award Attorneys' Fees to the NEI Defendants Because the Case is Exceptional, and the Attorneys' Fees and Expenses are Reasonable.**

This Court should exercise its discretion to award the NEI Defendants their attorneys' fees and expenses under § 285. Once the Court finds that a case is "exceptional," it must then exercise

its discretion to determine whether to award fees. *Kilopass*, 738 F.3d at 1317. Courts do so where "the interest of justice warrants fee-shifting," *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1582 (Fed. Cir. 1992), because "it would be *grossly unjust* that the winner be left to bear the burden of his own counsel," *J.P. Stevens Co. v. Lex Tex Ltd.*, 822 F.2d 1047, 1052 (Fed. Cir. 1987) (emphasis in original).

An award of attorneys' fees and expenses is appropriate in this case because the NEI Defendants had to engage in over twelve years of litigation based on patents that *Plaintiffs proved* were invalid, unenforceable, and clearly not infringed. Though all asserted patent claims were ultimately cancelled through PTO reexaminations, the basis of those cancellations was either apparent and obvious to Plaintiffs since the inception of this action or was *proved by Plaintiffs* in their effort to provide cover for Tristar's willful patent infringement in the separate 13-1758 action. Plaintiffs' decision to pursue correction of inventorship of the '941 patent (and its patent family) implicitly admits their knowledge that none of the asserted Ragner patents claimed products like, or could be infringed by, those sold by the NEI Defendants. If Plaintiffs believed their arguments in this case, they would not have pursued *the opposite* theory in the other action—they would have relied on the Ragner patents to have been infringed by the accused products here and, would have relied on the Ragner patents to have anticipated or rendered obvious the '941 patent family. But Plaintiffs knew that argument, despite being pursued for over a decade here, was wholly meritless.

Further, at each stage where Plaintiffs could have—and should have—re-assessed their litigation position and dismissed their claims, Plaintiffs "doubled down" and argued in every possible way to prolong this action. Plaintiffs capitalized on their misconduct before the PTO in order to prolong this case, preventing the Court from construing the '448 and '836 spring-patents as requiring springs, by inserting the '076 patent and relying on the result of their inequitable conduct/fraud on the PTO. When the '448 patent was cancelled, removing nearly the entire possible damage award from the claims against the NEI Defendants, Plaintiffs persisted. Even after all asserted claims of all asserted patents were cancelled, Plaintiffs persisted. Plaintiffs' baseless

infringement allegations and litigation misconduct throughout the Consolidated Cases, and extending to the PTO and other forums, further demonstrates their bad faith pursuit of this litigation.

The amount of attorneys' fees awarded depends on the extent to which the case is exceptional. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001). Given the amount of time over which Plaintiffs asserted this sham lawsuit against the NEI Defendants, and the NEI Defendants' total victory over Plaintiffs' patent infringement claims, the NEI Defendants deserve full and adequate compensation in this litigation.

**ATTORNEY'S FEES**: Under Third Circuit law, attorney's fees are calculated using the "lodestar" approach, which requires multiplying the amount of time reasonably expended by reasonable hourly rates. *Lugus IP*, 2015 WL 1399175, at *6. The party seeking fees bears the initial burden of proving the reasonableness of the time and hourly rates used in the lodestar calculation and, once proven, the adverse party bears the burden of challenging the reasonableness of the requested fees. *Ibid*. The accompanying Declaration of Edward F. McHale in Support of Fees and Expenses Determination ("McHale Fees Dec.") provides a breakdown of the various fees billed and paid by the NEI Defendants, the attorney time spent on these cases, and hourly rates for each attorney for which recovery is sought. As shown in the McHale Fee Declaration, the attorney rates billed to the NEI Defendants are reasonable, and generally lower than those of comparable firms. Accordingly, the NEI Defendants seek **$1,047,936.20** in attorney and staff fees for the law firms of McHale & Slavin, P.A., and Graham Curtin, P.A., and later McElroy, Deutsch, Mulvaney & Carpenter, LLP, which have represented the NEI Defendants in this litigation. McHale Fees Dec. ¶¶ 17–36.

**EXPENSES**: A fees award under 35 U.S.C. § 285 includes "those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Central Soya Co., Inc. v. Geo. A. Hormel & Co*., 723 F.2d 1573, 1578 (Fed. Cir. 1983); *see also Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. 12-1285 2016 WL 3436396, at *5 (D. Del. June 15, 2016) (allowing expenses relating to "travel, food, lodging, mail, photocopying, facsimile, courier, filing fees, deposition transcripts, subpoena services, and other related

services"). The McHale Declaration itemizes the specific expenses sought by the NEI Defendants, which total **$39,682.23**. McHale Fees Dec. ¶¶ 37–38.

## CONCLUSION

For all of the reasons set forth above, the NEI Defendants respectfully request that the Court award them just compensation under 35 U.S.C. § 285.

Dated: February 14, 2025

Respectfully submitted,

s/ *Kathleen N. Fennelly*
Kathleen N. Fennelly
**McELROY, DEUTSCH, MULVANEY**
  **& CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
(973) 993-8100
kfennelly@mdmc-law.com

Edward F. McHale (*pro hac vice*)
Andrew D. Lockton (*pro hac vice*)
**McHALE & SLAVIN, P.A.**
2855 PGA Boulevard
Palm Beach Gardens, Florida 33410
(561) 625-6575
emchale@mchaleslavin.com
alockton@mchaleslavin.com
litigation@mchaleslain.com

*Attorneys for National Express, Inc., E. Mishan &*
*Sons, Inc., and DAP Products, Inc.*